Leslie F. SMITH and Liv L. Smith, Plain-
tiffs in Error,

v.

Bruce GOFF, William H. Wilson, and C. J.
Powell, Defendants in Error.

No. 37942.

Supreme Court of Oklahoma.

April 15, 1958.

Rehearing Denied June 3, 1958.

**1062**

Homer Cowan, Norman, for plaintiffs in error.

Monnet, Hayes & Bullis, Oklahoma City, for defendants in error, Bruce Goff and William H. Wilson.

Luttrell & Luttrell, Norman, for defendant in error, C. J. Powell.

PER CURIAM.

The plaintiffs in error, plaintiffs below, are the owners of certain property in Norman, Oklahoma, on which they have had constructed a home. The contracts which form the basis of this action were negotiated for the purpose of constructing this home. Two agreements are involved: that between the plaintiff owners and the defendant architects, and that between the plaintiff owners and the defendant contractor who built the dwelling. We shall refer to the parties by their contractual status as owners, architects and contractor, respectively.

In August, 1950, owners and architects entered into a written contract providing for architects to furnish "complete architectural services including preliminary plans, working drawings and specifications, and periodic supervision for a residence to be built * * *" at an "intended cost of $9,000.00 * * *." However, it was also provided that the "Architect does not guarantee the cost but will make any revisions in his plans made necessary by excessive costs or unavailability of materials * * *." Pursuant to this contract, architects furnished a plan and specifications for a residence. When bids were taken on this plan, the lowest bid received amounted to $16,000 which owners felt was more than they could afford and which resulted from including everything in the plan that owners wanted to have in their home. Architects thereupon made certain revisions in the plan and specifications, and contractor submitted a second bid of $14,000 which was likewise more than owners wanted to invest. Nevertheless, against their architects' advice that they should wait until prices stabilized, owners desired to build a house immediately and substantially the

same as the original floor plan prepared by architects. In conversations with architect and builder it was decided that such a floor plan and structural design could be constructed at a substantially lower cost by changing the specifications and using less expensive material. Thereupon, because the owners did not want to go through another war without a home of their own, the owners and contractor entered into their contract wherein it was provided that in consideration of $10,500 "The contractor shall furnish all the material (except certain specific items) and perform all the work necessary in the construction of the residence * * * in accordance with the drawings and simplified method of construction to be furnished by Bruce A. Goff, architect, and C. J. Powell, contractor." It was also provided "that the contractor shall employ methods approved by Bruce A. Goff in order to maintain the initial effect of the building and floor plans as shown in the drawings, and at the same time, keep the cost down to the mentioned sum." Another provision required diligent completion "in a good and workmanlike manner." There were no exhaustive specifications compiled and attached to this agreement. Instead, certain notes were placed on a floor plan (plaintiffs' Exhibit 6 which was introduced but is not included in the record) from which architect and contractor more or less improvised as construction proceeded so that they could meet owners' desire for this house plan and at the same time overcome both the difficulties of monetary limitation and the material shortage produced by the Korean conflict.

After the house was completed and occupied by owners, and the contractor and architects paid, owners began to discover the items enumerated in their petition which it is alleged are defects which violate the provisions of their contracts. In substance, their petition alleges liability "jointly and severally" by architects for failing to use reasonable skill and diligence, and by contractor for failing to construct in a workmanlike manner. They also predicated liability of the defendants upon their alleged fraudulent concealment of the fact that the residence was not constructed in accordance with the plans and specifications in the contract. The case was tried to a jury. At the close of plaintiffs' evidence, defendant contractor demurred, and this demurrer was sustained. The case proceeded to a verdict of the jury in favor of the architects. Plaintiffs appeal.

It is urged that the court erred in sustaining the contractor's demurrer to the evidence. This position is well taken. In addition to the alleged failure to follow the plan and specifications in the construction of the house, about which we will have more to say later, liability against contractor was also predicated on a failure to build in a workmanlike manner. Respecting this phase, there was testimony of several witnesses for plaintiffs concerning the lack of quality in workmanship as displayed by several of the items alleged as defects in the completed structure. Some of these alleged defects could be explained upon other grounds than poor workmanship, but this was an issue of fact to be resolved by the jury. The defendant contractor argues that the building was accepted by the architect, the agent of the owners, and that the architect's acceptance binds the owners in the absence of fraud or mistake. The foregoing general rule is not applicable to this action. Here, there is no contractual provision calling for acceptance by the architect or requiring that the work shall be done to his satisfaction. The rule contended for is only applicable where the contractual provisions of the construction contract make an acceptance by the architect a prerequisite. Mercantile Trust Co. v. Hensey, 205 U.S. 298, 27 S.Ct. 535, 51 L.Ed. 811, 10 Ann.Cas. 572. Whether contractor employed "methods approved by Bruce A. Goff in order to maintain the initial effect of the building" is not the same question as whether those construction methods were employed by contractor in a "good and workmanlike manner" as was likewise required by their contract. This question must be resolved

by the jury. Wright v. Turner, Okl., 301 P.2d. 364.

■■ We now proceed to a consideration of the judgment in favor of the architects. Much of plaintiffs' argument is bottomed on an assumption that the written specifications first promulgated by architect were those to be used in the construction. This assumption is contrary to the architects' contract and the contract under which the house was built. The first provided that architect would revise specifications to reduce excessive costs if necessary, and the second provided for a $10,500 price and "drawings and simplified method of construction *to be* furnished." (Emphasis supplied.) The court properly excluded the original specifications, for they were not incorporated in the construction contract; and, as the undisputed evidence disclosed, they were not used by architect in the construction because the property could not be built under them within an amount the owners could afford to pay. The specifications used in the construction, it is obvious from the testimony, were not the same as the original specifications because it was necessary that materials be purchased and used according to their availability and cost.

With the foregoing factual situation in mind the various assignments of error may be disposed of more briefly. So far as plaintiffs' action is based upon the allegations of fraud, it lacks evidentiary support. There was no evidence that the house was not constructed strictly according to the plan and specifications furnished by the architect in an endeavor to build the house within the financial limitations imposed by the owners in the building contract. These owners cannot predicate fraud upon their erroneous assumption that a $14,000 house could be constructed for substantially less without a change in the quality of materials and methods of construction used in the building. This issue was properly taken from the jury. Jungels v. Town of Hennessey, 202 Okl. 619, 217 P.2d 167; Tyler v. Hartford Accident & Ind. Co., 195 Okl. 523, 159 P.2d 722.

■ The issue so far as the architects are concerned was whether they used that degree of professional care required of them in the origination of the plans and specifications and in the supervision of the construction. The court instructed the jury on this issue. The use of various materials in the building which were not the same as those in the original specifications presented the question of the architects' professional judgment as to the suitability of the material for the purpose. The same is true concerning the methods employed "to maintain the initial effect of the building." So also, concerning the architects' supervision of construction. Architects are only required to exercise ordinary professional skill and diligence and to conform to accepted architectural standards; their contracts do not guarantee perfect plans or satisfactory results. Architects are only liable for failure to exercise reasonable care and professional skill in the preparation and execution of their plans according to their contract. Ressler v. Nielsen, N.D., 76 N.W.2d 157. Here the contract did not call for the use of any certain materials in the preparation of the plans by the architects. They were required to use their professional judgment. This issue was properly submitted to the jury by the court's instruction which stated that the law required that the architects perform their contractual duties with "ordinary care and diligence." This was the only issue made by the evidence as to them, for it was undisputed that architects furnished "complete architectural services including preliminary plans, working drawings and specifications * * *" as well as "* * * revisions in his plans made necessary by excessive costs * * *." The jury verdict is conclusive on the controverted issue. Jackson v. Gifford, Okl., 264 P.2d 313.

■ The owners submitted certain requested instructions which, they assert, the court erroneously refused. Their Instruction Three was a verbatim compilation of many of our statutory provisions concerning contracts. It was properly re-

fused because it had no immediate relation to the law applicable to the issue for decision. Their Instruction One concerned the preponderance of the evidence, and this subject was adequately covered by the court's Instruction Two. Their Instructions Two, Four, Five and Six, either contained matters inapplicable to the issue between owners and architects, or else the instructions by the court adequately covered the matters contained therein.

The judgment in favor of the architects is affirmed; the judgment in favor of the contractor is reversed with directions to grant plaintiffs a new trial.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by the Commission, the cause was assigned to a Justice of this Court, and thereafter, upon report and consideration in Conference, the foregoing opinion was adopted by the Court.