## Bishop v. Walker et al.

June 4, 1943.

Hiram H. Owens, Sylvester V. Little and Herschell Sutton for appellant.

A. T. W. Manning and Begley & Begley for Walker, Johnson, and Johnson, appellees.

William Lewis & Son, and William Hamm for Edwards and Eversole, appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

On November 17, 1941, Ethel M. Bishop lost her life as a result of an explosion of gas which wrecked and set fire to the building in which she was employed; and this action was instituted to recover damages for her death. The building, which had just been completed, was owned by the Farmers' Livestock Market, a partnership, and Mrs. Bishop's employment was in connection with a restaurant designed for the accommodation of the Company's customers. The immediate cause of the explosion was the act of John Rawlings, a plumber employed by the owners, who, in endeavoring to discover a gas leak, applied a lighted match to the pipe connecting a stove, which he had installed in the office a few hours before, with a tap protruding through the floor. On November 7th, the appellee Gas Company had completed the installation of the gas line leading into the

building; and on November 11th, had installed an additional meter. The building, which comprised the stock barn, office, and restaurant, was only one story in height and had no foundation or basement; and it was the theory of appellant that the gas which exploded had accumulated in the subsequently enclosed space between the floor and the earth where the Gas Company had installed its pipes. During the forenoon of the day of the explosion, Rawlings had removed a gas stove from the office to the restaurant and installed a new and larger gas stove in the office. Some hours later, while he was working outside the building, the wife of one of the owners called to him that she thought there was a gas leak in the stove in the office, whereupon he entered the office and proceeded to search for the leak with the result above related.

Although appellant attempted to show that upon completing the installation of its pipes and meters, the Gas Company should have employed other tests than the one which it employed to ascertain whether or not there were leaks, there was no evidence showing that any of its work was defective, or that it was guilty of any negligence. On the contrary, the facts that the small stove had been burned in the office from November 12th to the 17th without accident, and that no one had smelled gas in any part of the building until after Rawlings had installed the large stove in the office on the 17th, are strongly indicative that the leak was the result of a faulty connection made by him, and that this lack of care on his part and his negligence in lighting a match after having been notified of the odor of gas were the sole causes of the explosion. Neither are we able to discover any negligence on the part of the owners of the building, unless it was in employing an incompetent plumber. But it was not alleged in the petition that Rawlings was incompetent, or that he was in the employ of the livestock market. On the contrary, it was expressly alleged that he was employed by the London Appliance Company, which was alleged to be a subsidiary of the Gas Company. Rawlings and the Appliance Company, the latter of whom merely sold the fixtures, were dismissed on the motion of the appellant; the Court, at the conclusion of the plaintiff's testimony, directed the jury to find a verdict for the Gas Company; and the only question submitted to the jury was the liability of the owners of the livestock market. The jury returned a verdict for those

defendants, and the result is this appeal, on which it is insisted by appellant that the Court erred in peremptorily instructing the jury to find for the Gas Company, and in refusing to direct a verdict against the owners of the livestock market.

From the foregoing recital of the salient facts disclosed by the testimony, it is apparent that the Court properly instructed the jury to find a verdict for the Gas Company. To particularize, the petition was bottomed upon the allegations that the installation of the gas fixtures and appliances within and under the building "was imperfectly and improperly done;" that all of the defendants breached a duty which they owed appellant's decedent to furnish her a reasonably safe place "to be in the said room and building;" and that the explosion was the result of the joint and concurrent negligence of all of the defendants. But the only negligence shown was that of Rawlings, who admitted that he knew that it was dangerous to light the match. As before stated, it was alleged in the petition that Rawlings was an employee of the London Appliance Company, which, together with Rawlings, was made a party defendant, and hence there was no allegation on which the Livestock Market could have been held liable for Rawlings' negligent act.

While insisting that the Court should have peremptorily instructed the jury to find a verdict in his favor against the owners of the livestock market, appellant does not complain of the instructions by which the question of their liability was submitted to the jury. Indeed, he could not well do so, since they followed almost verbatim those which he offered. The gist of them was that it was the duty of the owners of the livestock market to exercise ordinary care "to install, inspect, and maintain in a reasonably safe condition the gas lines, connections, and appliances shown in the evidence," and, "if gas was found to be escaping from any of same, to exercise such care not to ignite, or cause same to be ignited or exploded after same was discovered to be escaping." It would seem clear from the evidence that in the absence of a pleading alleging the existence of the relation of master and servant between the owners and Rawlings, the instructions given imposed upon the owners every duty which the law could possibly have re-

quired of them, and that none of these duties was violated.

Judgment affirmed.